# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LINDA JOY,
an individual,

      Plaintiff,

v.

Case No.:

ONEMAIN FINANCIAL SERVICES, INC.,
f/k/a SPRINGLEAF FINANCIAL
SERVICES, INC.,

      Defendant.
_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, LINDA JOY (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, ONEMAIN FINANCIAL SERVICES, INC., f/k/a SPRINGLEAF FINANCIAL SERVICES, INC. (hereinafter, "Defendant"). In support thereof, Plaintiff states:

### INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

1

2. Venue in this District is proper because Defendant transacts business in this District, and the conduct complained of occurred in this District.

3. At all material times herein, the conduct of Defendant, complained of below, occurs in Pinellas County, Florida.

4. At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

5. At all material times herein, Defendant is a foreign for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 601 NW Second Street, Evansville, Indiana 47708.

## GENERAL ALLEGATIONS

6. At all material times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55(5).

7. At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

8. At all material times herein, Defendant attempts to collect a debt, specifically an alleged deficiency balance due on an automobile installment loan referenced by account number ending in -1195 (hereinafter, the "Debt").

9. At all material times herein, the Debt is a consumer debt, resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

10. At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

11. At all material times herein, Defendant's conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

12. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

13. All necessary conditions precedent to the filing of this action occurred or Defendant waived the same.

## FACTUAL ALLEGATIONS

14. Defendant made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 727-XXX-4758 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

15. Plaintiff is the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 727-XXX-4758.

16. At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

17. Further, if Defendant contends it did possess such consent at one point in time, Plaintiff nonetheless repeatedly revoked any alleged prior existing consent the moment Plaintiff demanded that Defendant cease calling Plaintiff's Cellular Telephone and again revoked any alleged prior express consent the moment Plaintiff advised Defendant that she was represented by an attorney with respect to the Debt and provided Defendant with said attorney's contact information.

18. Additionally, if Defendant contends the below-referenced phone calls were made for "informational purposes only," Defendant nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

19. On or about January 21, 2016, Plaintiff applied for a loan with Defendant to consolidate existing personal loan obligations including an automobile loan previously owed to Chrysler Capital. Please see attached a true and correct copy of the loan application labeled as Exhibit "A."

20. On or about January 21, 2016, Plaintiff entered into an installment loan agreement with Defendant (hereinafter, the "Loan Agreement") including the immediately-aforementioned automobile loan secured by a 2013 Hyundai Elentra (hereinafter, the "Collateral"). Please see attached a true and correct copy of said installment loan agreement labeled as Exhibit "B."

21. On or about January 21, 2016, Defendant sent Plaintiff a letter advising that Defendant would deposit the loan proceeds contemplated under the Loan Agreement to Plaintiff's bank account within one (1) business day. Please see attached a true and correct copy of said letter labeled as Exhibit "C."

22. Pursuant to the Loan Agreement, Plaintiff agreed to make Debt payments to Defendant beginning March 1, 2016.

23. On or about February 29, 2016, Plaintiff made her regular monthly Debt payment to Defendant as required by the Loan Agreement.

24. On or about April 11, 2016, Plaintiff made her regular monthly Debt payment to Defendant as required by the Loan Agreement.

25. In May 2016, Plaintiff did not make her regular monthly payment to Defendant as

required by the Loan Agreement.

26. As a result, during the months of May 2016 and June 2016, Defendant made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

27. Defendant made the immediately-aforementioned calls from telephone number 800.742.5465 in an attempt to collect the Debt.

28. In May 2016, Plaintiff answered the second call made by Defendant regarding the Debt and requested that Defendant cease calling Plaintiff regarding the Debt.

29. Furthermore, in May 2016 and June 2016, Plaintiff answered several then calls made by Defendant and repeatedly requested that Defendant cease calling Plaintiff regarding the Debt.

30. Despite Plaintiff's repeated requests that Defendant cease calling Plaintiff regarding the Debt, Defendant continued to make calls to Plaintiff's Cellular Telephone between approximately three (3) to six (6) times per day using an ATDS, PTDS, or APV in its attempts to collect the Debt.

31. On or about June 17, 2016, Plaintiff made a Debt payment to Defendant as required by the Loan Agreement and also paid a fifteen-dollar ($15.00) late fee to Defendant.

32. On or about July 1, 2016, Plaintiff made a Debt payment to Defendant as required by the Loan Agreement and also paid a fifteen-dollar ($15.00) late fee to Defendant.

33. In August 2016, Plaintiff did not make her regular monthly Debt payment to Defendant as required by the Loan Agreement.

34. During the months of August 2016—despite Plaintiff previously requesting that Defendant cease calling Plaintiff regarding the Debt—Defendant repeatedly made Debt collection calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

35. Defendant made the immediately-aforementioned calls from telephone number 800.742.5465 in an attempt to collect the Debt.

36. In August 2016, Plaintiff answered several calls made by Defendant and again repeatedly requested that Defendant cease calling Plaintiff regarding the Debt.

37. On or about August 26, 2016, Plaintiff made a Debt payment to Defendant as required by the Loan Agreement and also paid a fifteen-dollar ($15.00) late fee to Defendant.

38. On or about October 11, 2016, Plaintiff received an offer from Defendant to defer the two (2) missed Debt payments required by the Loan Agreement, specifically, the payments that were due for May 2016 and August 2016 respectively.

39. On or about October 11, 2016, Plaintiff executed the immediately-aforementioned offer electronically via DocuSign and returned the agreement to Defendant (hereinafter, the "Deferment Agreement"). Please see attached a true and correct copy of the executed Deferment Agreement and corresponding electronic signature consent agreement labeled as Composite Exhibit "D."

40. Pursuant to the Deferment Agreement, Plaintiff and Defendant agreed to extend the Loan Agreement by two (2) months. As a result, Plaintiff's May 2016 and August 2016 payments would be deferred to the last two (2) months of the maturity date originally agreed upon in the Loan Agreement (i.e., until April 2021). *See* Ex. D.

41. On or about October 17, 2016, Plaintiff made a Debt payment to Defendant as required by the Loan Agreement and also paid a fifteen-dollar ($15.00) late fee to Defendant.

42. On or about November 28, 2016, Plaintiff made a Debt payment to Defendant as required by the Loan Agreement and Deferment Agreement.

43. Between December 6, 2016 at 5:00 p.m. EST and December 7, 2016 at 6:00 a.m.

EST—despite Plaintiff executing the Deferment Agreement in October 2016—Defendant repossessed the Collateral securing the Debt.

44. On or about December 7, 2016, Defendant sent Plaintiff a letter advising that Defendant repossessed the Collateral securing the Debt and advised Plaintiff that Defendant intended to sell the Collateral securing the Debt via private sale "sometime after 12/19/16," and that Plaintiff will owe Defendant any resulting deficiency balance owed on the Debt. Please see attached a true and correct copy of said letter labeled as Exhibit "E."

45. After Defendant repossessed the Collateral securing the Debt, Plaintiff called Defendant and spoke with Defendant's employee or representative.

46. During the immediately-aforementioned call, Defendant's employee or representative advised Plaintiff that Defendant repossessed the Collateral because Plaintiff missed two (2) payments on the Debt.

47. In response, Plaintiff advised Defendant's employee and representative that she previously executed the Deferment Agreement extending the missed payments until the end of the loan term, and demanded that Defendant return the Collateral.

48. Defendant's employee or representative, however, advised Plaintiff that Defendant was not authorized to enter into the Deferment Agreement previously sent to and executed by Plaintiff.

49. On or about January 18, 2017, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to the Debt and the unlawful repossession of the Collateral.

50. On or about January 30, 2017, Defendant sent Plaintiff a letter advising that Defendant sold the Collateral securing the Debt and asserting a deficiency balance owed on the

Debt in the amount of $8,820.22. Please see attached a true and correct copy of said letter labeled as Exhibit "F."

51. Between December 2016 and December 2017, despite Plaintiff's repeated requests that Defendant cease calling Plaintiff regarding the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

52. Defendant made the immediately-aforementioned calls from telephone number 800.742.5465 in its attempts to collect the Debt from Plaintiff.

53. Importantly, Defendant made up to nine (9) calls per day to Plaintiff's Cellular Telephone in its attempts to collect the Debt from Plaintiff.

54. Moreover, Plaintiff answered several calls made by Defendant between December 2016 and December 2017, advising Defendant that Plaintiff had retained Undersigned Counsel with respect to the Debt, provided Undersigned Counsel's contact information, and requested that Defendant cease calling Plaintiff regarding the Debt. Plaintiff further requested that Defendant direct such communications to Undersigned Counsel's office.

55. On at least one occasion, Defendant's employee or representative responded to Plaintiff's request that Defendant contact Undersigned Counsel by asserting "I don't give a shit if you have an attorney."

56. Furthermore, between December 2016 and December 2017, Defendant repeatedly made calls to Plaintiff's place of employment in its attempts to collect the Debt.

57. Plaintiff answered several of Defendant's immediately-aforementioned calls made to Plaintiff's place of employment, requested that Defendant cease calling Plaintiff regarding the Debt, and specifically requested that Defendant cease calling Plaintiff at her place of employment.

58. Despite Plaintiff's repeated requests that Defendant stop calling Plaintiff regarding

the Debt, Defendant continued to make calls to Plaintiff's place of employment and otherwise.

59. Specifically, on at least one occasion, one of Defendant's employees or representative admitted "I know you told me not to call you at work" before proceeding to discuss the Debt with Plaintiff.

60. As a direct result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, confusion and loss of sleep, believing that repeatedly requesting that Defendant cease calling Plaintiff regarding the Debt and cease calling Plaintiff at work regarding the Debt was wholly ineffective, that retaining Undersigned Counsel with respect to the Debt and advising Defendant of the same was wholly ineffective, and that the frequent, repeated debt collection attempts regarding would simply have to be endured.

61. It is Defendant's corporate policy to use an ATDS, a PTDS, or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

62. Defendant employed its Corporate Policy of using an ATDS, a PTDS, or an APV when Defendant made the calls to Plaintiff's Cellular Telephone in this case.

63. Defendant made the calls to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove her Cellular Telephone number from Defendant's telephone dialing system.

64. Defendant made calls, or caused calls to be made, to Plaintiff with no effective way for Defendant to remove the telephone number from Defendant's telephone dialing system.

65. Defendant's Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by an ATDS, PTDS, or APV to make Defendant cease calling Cellular Telephone.

66. Defendant's Corporate Policy and procedures are structured as to continue to call individuals like Plaintiff using an ATDS, a PTDS, or an APV, regardless of how many times said

individuals and request cease calling a cellular telephone regarding a debt owed to Defendant.

67. Upon information and belief, Defendant engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, or an APV despite lacking consumers' prior express consent to do so.

68. Defendant willfully, knowingly and repeatedly undertakes these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

69. Based on Defendant's pattern and practice described herein, this Court should grant significant and substantial punitive damages sufficient enough to prevent Defendant from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

70. Plaintiff states that the imposition of a substantial punitive damage award is required in order to force Defendant to comply with well-established federal and state privacy and debt collection laws.

71. Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

72. Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

73. United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

74. Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

75. As of the date of this complaint, Defendant did not initiate a law suit in an effort to collect the Debt. Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendant.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

76. Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

77. Specifically, despite Plaintiff's numerous requests that Defendant cease calling her regarding the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV between May 2016 and December 2017, calling Plaintiff up to nine (9) times a day in its attempts to collect the Debt.

78. Further, despite Plaintiff advising Defendant that she retained Undersigned Counsel with respect to the Debt and providing Defendant with Undersigned Counsel's contact information, Defendant continued to call Plaintiff's Cellular Telephone and at Plaintiff's place of employment in an attempt to collect the Debt, on at least one occasion telling Plaintiff "I don't give a shit if you have an attorney."

79. Moreover, despite Plaintiff requesting that Defendant cease calling her regarding the Debt and specifically requesting that Defendant cease calling her at her place of employment, Defendant continued to call Plaintiff at her place of employment to collect the Debt and Defendant's employee or representative told Plaintiff "I know you told me not to call you at work" before proceeding to discuss the Debt with Plaintiff.

80. Defendant's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone and at her place of employment in an attempt to collect the Debt, despite Plaintiff's repeated demands that such calls cease. Defendant vulgarly refused to cease engaging in such unlawful debt collection conduct.

81. Defendant's willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

82. As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(8)**

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

83. Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(8) by using profane, obscene, vulgar, or willfully abusive language in communicating with Plaintiff regarding the Debt.

84. Specifically, Plaintiff repeatedly requested that Defendant cease calling her regarding the Debt, repeatedly advised Defendant that Undersigned Counsel represented Plaintiff with respect to the Debt, and repeatedly provided Defendant with Undersigned Counsel's contact information for future Debt collection communications.

85. Despite repeatedly advising Defendant that Undersigned Counsel represented Plaintiff with respect to the Debt and despite Plaintiff repeatedly providing Defendant with Undersigned Counsel's contact information, Defendant's employee or representative told Plaintiff "I don't give a shit if you have an attorney" and Defendant subsequently continued to call Plaintiff's Cellular Telephone and at Plaintiff's place of employment in its attempts to collect the Debt, despite known risks that exist to Plaintiff's continued employment in light of such unlawful communications.

86. As such, Defendant explicitly and vulgarly refused to adhere to Plaintiff's repeated requests that Defendant's debt collection calls be directed to Undersigned Counsel's office in violation of Florida Statutes, Section 559.72(8).

87. As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>**

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

88. Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Undersigned Counsel with

respect to the Debt and after possessing Undersigned Counsel's contact information.

89. Specifically, Plaintiff repeatedly provided Defendant with actual knowledge that Undersigned Counsel represented Plaintiff with respect to the Debt and repeatedly provided Defendant with Undersigned Counsel's contact information.

90. Despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant subsequently made repeated calls to Plaintiff between January 2017 and December 2017 in its attempt to collect the Debt.

91. Furthermore, on at least one occasion, Defendant's employee or representative told Plaintiff "I don't give a shit if you have an attorney" and Defendant subsequently continued to call Plaintiff's Cellular Telephone and at Plaintiff's place of employment in its attempts to collect the Debt.  Knowledge of attorney representation regarding the Debt was known and vulgarly set aside.

92. As such, Defendant attempted to collect the Debt directly from Plaintiff, a known represented party in violation of Florida Statutes, Section 559.72(18).

93. As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT FOUR:
### TELEPHONE CONSUMER PROTECTION ACT-
### <u>VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)</u>

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

94. Defendant is subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to make a call a telephone number assigned

to a cellular telephone service without Plaintiff's prior express consent.

95. At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

96. If Defendant contends it possessed such consent, Plaintiff revoked any such purported consent each and every time Plaintiff requested that Defendant cease calling Plaintiff regarding the Debt and revoked any such purported consent each and every time Plaintiff advised Defendant that she retained Undersigned Counsel's with respect to the Debt.

97. Additionally, if Defendant contends the referenced phone calls were made for "informational purposes only," it nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

98. Between May 2016 and December 2017, despite lacking Plaintiff's prior express consent and despite Plaintiff repeatedly requesting that Defendant cease calling her regarding the Debt, Defendant repeatedly called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV and called Plaintiff up to nine (9) times per day.

99. The phone calls made by Defendant complained of herein are the result of a repeated willful and knowing violation of the TCPA.

100. As a direct and proximate result of Defendant's conduct, Plaintiff suffered:

    a. The periodic loss of her Cellular Telephone service and the cost associated therewith;

    b. Lost material costs associated with the use of peak time minutes allotted under her Cellular Telephone service contract; and

      c.      Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

      a.      Judgment against Defendant declaring that Defendant violated the FCCPA;

      b.      Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

      c.      Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

      d.      Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

      e.      Judgment against Defendant for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendant acted knowingly and/or willfully;

      f.      Actual damages in an amount to be determined at trial;

      g.      An award of attorneys' fees and costs; and

      h.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates

safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

          Respectfully submitted,

          **LEAVENLAW**

          /s/ *Sean E. McEleney*
          ☐ **Ian R. Leavengood, Esq., FBN 0010167**
          ☐ **Gregory H. Lercher, Esq., FBN 0106991**
          **[X] Sean E. McEleney, Esq., FBN 0125561**
          Northeast Professional Center
          3900 First Street North, Suite 100
          St. Petersburg, FL 33703
          Phone: (727) 327-3328
          Fax: (727) 327-3305
          consumerservice@leavenlaw.com
          glercher@leavenlaw.com
          smceleney@leavenlaw.com
          *Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA           )
                           )
COUNTY OF Pinellas         )

Plaintiff LINDA JOY, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____Linda J Joy_____
Linda Joy

Subscribed and sworn to before me
this 16 day of May, 2018.

_____Kathleen Strader_____
Notary Public

My Commission Expires: _____    Proof of I.D.: J00053063757



Kathleen Strader
Commission # GG091705
Expires: April 9, 2021
Bonded thru Aaron Notary