```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

LINDA JOY,

      Plaintiff,
v.                                    Case No. 8:18-cv-1428-T-33JSS

ONEMAIN FINANCIAL SERVICES,
INC., f/k/a Springleaf Financial
Services, Inc.,

      Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant OneMain Financial Services, Inc.'s Motion to Compel Arbitration (Doc. # 17), which was filed on July 31, 2018. (Doc. # 17). OneMain also filed a separate Motion to Stay the Case Deadlines, (Doc. # 23), on August 22, 2018. Plaintiff Linda Joy responded to both Motions. (Doc. ## 26, 27). For the reasons that follow, the Court grants the Motion to Compel Arbitration and this case will be stayed pending the arbitration process.

**I.  Background**

On January 21, 2018, Joy applied for a loan with Springleaf Financial Services of America, Inc., now known as OneMain Financial Services, Inc. ("Defendant"), to consolidate existing loan obligations, including a car loan previously owed to Chrysler Capital. (Doc. # 1 at ¶ 19).

Joy entered into an installment loan agreement with Defendant and agreed to make monthly payments beginning March 1, 2016. (Id. at ¶ 22). The loan was secured by a 2013 Hyundai Elentra. (Id. at ¶ 20). The Loan Agreement is before the Court and it contains an "Arbitration Agreement and Waiver of Jury Trial," bearing Joy's e-signature. (Doc. # 1-2 at 6-7).

Joy made two monthly payments to Defendant, but in May of 2016, Joy failed to make her payment. (Doc. # 1 at ¶¶ 23-25). As a result, in May and June of 2016, Defendant placed three to six debt collection calls a day to Joy using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice. (Id. at ¶¶ 26, 30). Joy answered several of the calls and instructed Defendant to stop calling her regarding the debt. (Id. at ¶¶ 28-29).

Joy was able to make a few other payments on the debt, but once again fell behind in August of 2016. (Id. at ¶ 33). Defendants responded by placing unwanted calls to her cellular telephone. (Id. at ¶ 34). Joy claims that she entered into a deferment agreement with Defendant, but that Defendant nonetheless repossessed her Hyundai and then

2

placed repeated, unwanted calls to her cellular telephone. (Id. at ¶¶ 38-51). In addition, after Defendant sold the Hyundai securing the debt, Defendant "assert[ed] a deficiency balance owed on the [d]ebt in the amount of $8,820.22." (Id. at ¶ 50). Joy hired counsel and directed Defendant to direct all communications to her attorney. (Id. at ¶ 54). Defendant allegedly continued to place calls to Joy instead, including at her workplace. (Id. at ¶¶ 55-59). Accordingly, on June 13, 2018, Joy filed a Complaint against Defendant alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Florida Consumer Collection Practices Act, Fla. Stat. § 559. (Doc. # 1).

In response to the Complaint, Defendant filed the instant Motion to Compel Arbitration. Defendant asserts that Joy entered into a binding arbitration agreement that covers all of the claims in this lawsuit. In addition, Defendant points the Court to a delegation provision in the Arbitration Agreement in which the parties agreed that the arbitrator will decide whether a claim is subject to arbitration. In response, Joy contends that although she signed an arbitration agreement, her current claims are not covered by that agreement.

**II. Discussion**

The Federal Arbitration Act (FAA) "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. (internal quotation and citation omitted).

"State law generally governs whether an enforceable agreement to arbitrate exists." Delano v. Mastec, Inc., No. 8:10-cv-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Id. "[A]s a matter of federal law, any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983). And, "a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir. 2003).

Usually, the Court conducts a two-step inquiry to decide whether the parties must submit to arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1200 (11th Cir. 2004). The first step is to decide whether the parties agreed to arbitrate the dispute. Id. "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Fleetwood Enter., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). If the Court determines that the parties agreed to arbitrate, the Court then must assess "whether legal constraints external to the parties'

agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp., 473 at 628.

However, "the parties can agree to allow the arbitrator to determine the existence, scope, or validity of the arbitration agreement." Serrano v. Tuition Options, LLC, No. 17-cv-24443, 2018 WL 3145809, at *2 (S.D. Fla. June 27, 2018). In Jones v. Waffle House, Inc., 866 F.3d 1257, 1264 (11th Cir. 2017), the Court explained: "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." Such an agreement is referred to as a "delegation provision." Id. In the present case, both sides agree that the Arbitration Agreement contains a delegation provision. (Doc. # 26 at 12).

### A. **Assent to Arbitrate**

"It is well established that parties cannot be forced to submit to arbitration if they have not agreed to do so." Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 Fed. Appx. 782, 785 (11th Cir. 2008). But, Joy does not contest that she signed the Arbitration Agreement. That two-page Agreement states in relevant part:

> **UNDER THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR**

6

**JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL ("this Arbitration Agreement") TO THE FULLEST EXTENT PERMITTED BY LAW.**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION. This includes, but is not limited to all claims and disputes arising out of, in connection with, or relating to:

This Agreement with Lender; . . . *whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement . . .;* the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement; . . . any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; . . . any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees; and any claim for injunctive, declaratory, or equitable relief.

. . . .

**I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

(Doc. # 17 at 18-19)(delegation provision in italics).

With the Arbitration Agreement clearly bearing Joy's e-signature, Joy has not placed her agreement to arbitrate at issue.[1] Nor has she asserted unconscionability arguments.

---

[1] In <u>Melver v. Check 'n Go of Florida, Inc.</u>, No. 13-20528, 2013 U.S. Dist. LEXIS 195841 (S.D. Fla. July 22, 2013), the

Rather, she argues her "claims fall outside the scope of the Arbitration Agreement," focusing on a recent case, Gamble v. New England Auto Finance, Inc., No. 17-15343, 2018 WL 2446607 (11th Cir. May 31, 2018). Because the Arbitration Agreement contains a delegation provision, it is for the arbitrator – not the Court – to decide whether Joy agreed to arbitrate the claims presented in her Complaint. See Parnell v. CashCall, Inc., 804 F.3d 1142, 1148 (11th Cir. 2015)(finding delegation clause established requisite intent to commit to arbitration "any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement"). However, because both parties extensively analyze Gamble, the Court finds it important to discuss, and distinguish, Gamble.

In Gamble, the Eleventh Circuit affirmed the denial of a motion to compel arbitration in the context of a TCPA case involving a car loan. (Doc. # 26 at 3). Like Joy, Gamble entered into a loan with an arbitration agreement, which she

---

plaintiff sought to avoid arbitration of his employment law claims arguing, among other things, that his electronic signature on an arbitration agreement "is not his and is invalid." Id. at *4. The court compelled arbitration holding: "A signature on a contract may not be denied legal effect, validity, or enforceability solely because it is in electronic form." Id. at *5 (citing 15 U.S.C. § 7001(a)(1); Fla. Stat. § 668.004).

8

executed. Id. at *1. However, unlike Joy, Gamble paid off her loan in full. Id. Thereafter, New England Auto started sending Gamble text messages trying to entice Gamble to enter into a new loan agreement. Id. Gamble instructed New England Auto to cease and desist sending text messages, but the texts continued. Id. She accordingly filed a class action suit against New England Auto for violations of the TCPA. Id. New England Auto moved for an order compelling arbitration, arguing that her complaint "touches matters" within the loan agreement containing the arbitration clause. The Eleventh Circuit confirmed that the arbitration agreement could apply to a broad class of claims, but explained that "the plain language of the Arbitration Provision requires that the dispute "arise[] from or relate[] to this Agreement or the Motor Vehicle securing this Agreement." Id. at *2. The Court found that the parties' agreement to arbitrate was "broad" but that it was not "limitless." Id.

Relevant to the present case, the Eleventh Circuit construed Gamble's arbitration agreement as follows:

> Gamble signed an agreement whereby [New England Auto] promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay [New

9

England Auto] back – with interest – by a later
date. The Arbitration Provision only applies to
disputes arising out of, or related to, this
agreement.

Id.

The Eleventh Circuit characterized Gamble's TCPA claim as one for "post-agreement conduct that allegedly violates a separate, distinct federal law" and not one that arises from the loan agreement or a breach of the loan agreement. Id. Importantly, the Court pointed out that the text messages sent to Gamble did not relate to or arise from New England Auto's lending of money to Gamble, Gamble's repayment of the loan, or the collateral. Instead, after the loan was paid off, New England Auto sent texts to Gamble in an effort to secure new business with Gamble.

In contrast, in the present case, Defendant placed unwanted calls to Joy's cellular telephone in relation to her payment (more specifically, her non-payment) of her debt. The Court highlights the following allegations from Joy's Complaint:

> Specifically, despite Plaintiff's numerous requests that Defendant cease calling her regarding the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS or APV between May 2016 and December 2017, calling Plaintiff up to nine (9) times a day in its attempts to collect the Debt. Further,

despite Plaintiff advising Defendant that she retained [] Counsel with respect to the Debt and providing Defendant with [] Counsel's contact information, Defendant continued to call Plaintiff's Cellular Telephone and at Plaintiff's place of employment in an attempt to collect the Debt. . . . Moreover, despite Plaintiff requesting that Defendant cease calling her regarding the Debt and specifically requesting that Defendant cease calling her at her place of employment, Defendant continued to call Plaintiff at her place of employment to collect the Debt and Defendant's employee or representative told Plaintiff "I know you told me not to call you at work" before proceeding to discuss the Debt with Plaintiff.

(Doc. # 1 at ¶¶ 77-79).

Rather than attempting to secure a new lending opportunity, as was the case in Gamble, Defendant here was focused on securing repayment of the original loan agreement, and that loan agreement contains an arbitration agreement. Therefore, the Court is not persuaded that Joy's claims are exempt from arbitration, and the Court roundly rejects Plaintiff's assertion "the Eleventh Circuit Court of Appeals held that claims under the TCPA are per se non-arbitrable." (Doc. # 26 at 4).

It appears that Joy's claims fall squarely within the ambit of the Arbitration Agreement. See Vanwechel v. Regions Bank, No. 8:17-cv-738-T-23AAS, 2017 WL 1683665, at *1 (M.D. Fla. May 3, 2017)("Because the Vanwechels' TCPA, FCCPA, and

FDCPA claims 'relate' directly to the collection of money owed under the agreement (the defendants allegedly violated the TCPA, FCCPA, and FDCPA while attempting to collect the debt owed to Regions), the agreement requires the arbitration of the Vanwechels' claims."). However, due to the presence of the delegation provision, the arbitrator, and not the Court, will decide whether Joy's claims fall within the scope of the Arbitration Agreement.

### B. Stay of the Case

Lastly, "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002). Likewise,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had.

9 U.S.C. § 3 (2013). Thus, the present lawsuit will be stayed, rather than dismissed, pending the arbitration process.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant OneMain Financial Services, Inc.'s Motion to Compel Arbitration (Doc. # 17) and Motion to Stay the Case Deadlines (Doc. # 23) are **GRANTED** to the extent that the Court compels the parties to participate in the arbitration process.

(2) This case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the completion of the arbitration process.

(3) The parties are directed to file a status report regarding the arbitration process on March 13, 2019, and every 90 days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida on this 14th day of September, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE